WALTER L. BONNIWELL v. ST. PAUL UNION STOCKYARDS COMPANY.

135 N. W. (2d) 499.

May 21, 1965—No. 39,376.

*Stringer, Donnelly & Sharood* and *Richard Rohleder,* for appellant.

*Hvass, Weisman & King,* for respondent.

FRANK T. GALLAGHER, C.

Defendant, St. Paul Union Stockyards Company, appeals from a judgment and from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

In the trial court, the jury returned a verdict in favor of plaintiff, Walter L. Bonniwell, for damages incurred in a mishap which occurred on May 16, 1962, when he fell partway into a manhole at the St. Paul stockyards. The manhole was in an alley near a scale house at which Bonniwell had been working in his position as yardman for Central Livestock Association, one of the commission companies at the stockyards. Because of the location of the manhole, it was necessary that while performing his job Bonniwell pass very near or over it. After picking up weight tickets at the scale house, he was returning to Central's office when he stepped on the lid of this manhole and it tipped, allowing him to fall in. The outlet in question was placed where it was to allow access to a water valve. There is a hole in the cover which allows a specially designed tool to pass through so that the valve underneath can be operated without removing the cover. This tool (a T-bar) was seldom if ever used without removing the

cover. The reason given for this is that the hole was not lined up with the rod which was connected to the valve below and it was impossible to use the T-bar without removing the cover. Consequently, any time the valve below the cover was turned, the cover had to be removed and replaced.

In this general vicinity there was a limited amount of washing down of the scales and other uses of water which caused a flow of water and debris into this manhole. For example, Mr. Victor Frutiger, an employee of defendant who had washed screens in the area shortly before plaintiff fell, testified:

"Q. Now, when you rinse down the windows and the screens where does the water run?

"A. It would be down the—where that cover was laying there."

This accounts for the fact that there was a ½-inch-deep accumulation of compacted manure and other debris in the manhole rim where the cover was intended to fit.[1] Because this rim was only slightly more than ½-inch deep, there was very little of the rim extending above this debris to hold the cover in place. Somehow the cover became dislodged from the rim which was meant to hold it and, when plaintiff stepped on it, it tipped under him and he fell into the hole. Another employee of defendant, John McQuiston, noticed that the cover had sometimes

---

[1]Mr. Louis Wolfe, then an employee of defendant, who was called as a maintenance man to see what could be done about the cover after plaintiff's accident, testified:

"Q. * * * while you were there the manhole cover was taken off, is that correct?

"A. It was taken off.

"Q. And did you inspect the rim as shown in plaintiff's exhibit C-1 here and that also is in plaintiff's exhibit L?

"A. Yes, I did.

"Q. Did you find anything in the rim?

"A. I found a small amount of foreign matter on the lip of the rim.

"Q. What was this foreign matter?

"A. Well, it would be a combination of—well, manure, dust.

"Q. How deep was it?

"A. I would say approximately about a half inch."

become jarred loose by cattle moving through the area. He had replaced the cover at least two times when it had been out of its proper position.

Two employees of commission companies, Rayme Bultinck and Ralph Keene, testified that they had had similar experiences with the same loose manhole cover before and after Bonniwell's accident but were fortunate enough to escape injury.

On the bottom side of the cover are two fasteners which could be used to fasten the manhole securely to the rim. One of these is a nonmovable metal piece which is intended to slide under a peg which is on the inside of the rim. The other is a movable locking device which may be turned to catch another peg inside the rim and secure the cover. Plaintiff claims that if these fasteners had been used as the manufacturer intended, the cover could not have tipped as it did when he stepped on it. It is defendant's counter to this argument that the 75 pounds which the cover weighs is more than sufficient to keep the cover in place under normal circumstances. Defendant claims that these fasteners are only placed on the bottom of the cover to be used to secure it when it is used in sewer mains or elsewhere where there might be pressure from below.

In any event, the cover was certainly removed and replaced at least once on the day of the accident. Mr. Frutiger had found it necessary to remove it to turn on the water to wash screens. He replaced the cover. No explanation is available which would make it clear what finally caused the dislodging of the cover from the rim, although there are many possibilities because of traffic in the area.

Defendant in this appeal raises only the issue of liability, asserting that there was insufficient evidence to support a verdict of negligence against it and relying on Fandel v. Parish of St. John the Evangelist, 225 Minn. 77, 29 N. W. (2d) 817, 174 A. L. R. 600. In that case we stated (225 Minn. 85, 29 N. W. [2d] 822):

"* * * If there was any negligence on the part of defendant, it was in having the hole open, but there is no evidence to show that it had anything to do with the removal of the cover or knew who did remove it."

We do not consider the Fandel case controlling here. In that case, a coalhole cover was actually removed by some unknown third person and there was no evidence that defendant had actual or constructive notice of the danger which was present. For that reason defendant was there found to have no liability. The present case involves no activity of a third person. The acts which we are here concerned with are exclusively acts or omissions of the defendant or its employees. For this reason there is no need to prove that defendant had notice either actual or constructive and the exception noted in Messner v. Red Owl Stores, Inc. 238 Minn. 411, 413, 57 N. W. (2d) 659, 661, is in point:

"* * * *Unless the dangerous condition in the instant case resulted from acts of defendant's employes,* defendant would be negligent only if its employes failed to rectify the dangerous condition after they knew, or in the exercise of reasonable care should have known, that the condition existed." (Italics supplied.)

In the Fandel case no evidence could be given as to what caused the cover to be missing. Consequently, that case was submitted on the theory of res ipsa loquitur. This court held that res ipsa was not properly applicable because the instrumentality causing the injury was not in the exclusive control of the defendant. No one in the present case claims that res ipsa does or should apply. Plaintiff has here produced direct evidence which shows how the manure and other debris could have been washed into the rim which holds the manhole cover. The fact that the cover was equipped with a locking device which was not in use but which, if it had been used, could have prevented this accident also raises a fact question for the jury which was not present in the Fandel case. While it is clear that the locking device was intended to be used in situations where pressure could build up under the cover, it seems that this was not the only possible use for this lock. It could reasonably have been used in just such a situation as we have in this case to attain greater stability of the cover since it had been placed in an area where cattle and men would normally walk on it.

Defendant also cites Bergum v. Palmborg, 240 Minn. 122, 60 N.

W. (2d) 71, as authority for its argument that it did not have sufficient knowledge of the defect to cause liability to attach. In that case we stated (240 Minn. 126, 60 N. W. [2d] 73):

"* * * In the event a person lawfully using the sidewalk is injured by reason of the defective condition of such a trap door, the burden rests upon him to establish by a fair preponderance of the evidence that the trap door, at the time of the accident, was in a defective condition and that the defects therein were known to the owner or occupant of the adjacent property prior to the accident. Fandel v. Parish of St. John the Evangelist, 225 Minn. 77, 29 N. W. (2d) 817. Such knowledge may be shown by evidence that the owner or occupant created the defects, that they had been directly called to his attention, or that from the length of time they had existed, his knowledge thereof might be presumed. [Citations omitted.] Where there is no evidence to establish this, no liability attaches."

In applying this holding to the present case, it becomes apparent that there is no question concerning whether defendant had sufficient knowledge to cause liability to attach, since much of the evidence produced showed that defendant or its employees created the dangerous condition which later caused the injury to plaintiff.

The general rule concerning business invitees and the duty of reasonable care owed them by the possessor of the premises has been established and often repeated by this court. A possessor of premises used by business visitors, while not an insurer of their safety, is bound to exercise reasonable care to construct and to maintain his premises in a reasonably safe condition for their use. The duty is continuing in nature; it does not end with an original safe construction or installation but continues as long as the premises are devoted to such use. Reasonable inspection during such use is a duty incident to the maintenance of the premises. See, Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; McGenty v. John A. Stevenson & Co. 218 Minn. 311, 15 N. W. (2d) 874; Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380; Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247;

Mattson v. St. Luke's Hospital, 252 Minn. 230, 89 N. W. (2d) 743, 71 A. L. R. (2d) 422. See, also, Restatement, Torts, § 343.

In our opinion the facts of this case place it well within the rule laid down in the above cases. The jury could have found here that defendant was negligent in not instructing its employees that the cover be securely locked in place, as it could have been with the fasteners provided. Defendant could also have been found to be negligent in failing to make reasonable inspection and to keep clean the rim into which the cover was intended to fit. There is no question that a jury could reasonably have found either of these failures on the part of defendant caused plaintiff's injury.

We conclude that there was a fact question for the jury and sufficient evidence to sustain a finding of causative negligence against defendant.

Affirmed.