David C. OLMANSON, Appellant,

v.

LE SUEUR COUNTY, Respondent,

SHORELAND RECREATIONAL CO-OPERATIVE, d/b/a Shoreland Country Club, Respondent.

No. A03–629.

Court of Appeals of Minnesota.

Jan. 13, 2004.

Kay Nord Hunt, Robert J. King, Jr., Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for appellant.

Thomas P. Carlson, Jennifer J. Duchscherer, Carlson & Soldo, P.L.L.P., St. Paul, MN, for respondent Le Sueur County.

Noel L. Phifer, Gislason & Hunter, L.L.P., New Ulm, MN, for respondent Shoreland Recreational Cooperative.

Considered and decided by HARTEN, Presiding Judge; HUDSON, Judge; and CRIPPEN, Judge.[*]

## OPINION

HUDSON, Judge.

Appellant was snowmobiling on the east side of County Road 21, and he was injured when he crossed the road to enter the west ditch and collided with the side of a cement culvert running under the road. The accident occurred near the Shoreland golf course. Appellant sued respondent landowners Shoreland Country Club (Shoreland) and Le Sueur County (the county) for negligence.

Respondents both filed motions for summary judgment, arguing that appellant's claim was barred by the ten-year statute of repose in Minn.Stat. § 541.051, subd. 1(a) (2002). The county also argued that appellant's claim was barred by the doc-trines of statutory discretionary immunity and official immunity. The district court granted respondents' motion for summary judgment, finding that the statute of repose in Minn.Stat. § 541.051, subd. 1(a), barred appellant's claim. The district court denied respondent Le Sueur County's motion for summary judgment finding the county was not protected by discretionary or official immunity.

Appellant argues that the statute of repose did not bar his claim because it was preserved by the exception to the statute found in Minn.Stat. § 541.051, subd. 1(c) (2002). This exception applies to claims against the owner of real property for damages resulting from negligence in the maintenance, operation, or inspection of the real property. We affirm in part, reverse in part, and remand for trial.

## FACTS

On the afternoon of February 18, 2000, appellant David Olmanson went snowmobiling with friends. They were snowmobiling in the ditches along various roads, and eventually began traveling in the ditch on the east side of County Road 21. As evening approached, appellant attempted to cross County Road 21 ten to thirty feet away from a culvert, or tunnel, running under County Road 21. When crossing the road, the snowmobilers did not see the culvert or the barrier placed at the east side end of the culvert. Appellant crossed the road and headed down the west inside slope of County Road 21, where he hit the cement culvert and was injured.

Shoreland operates a golf course, portions of which are located on either side of County Road 21. Shoreland acknowledges that it owns the property where the cul-

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

vert is located. The county acknowledges that it has a prescriptive easement to use the property where the culvert is located. A former Le Sueur County highway engineer testified that the culvert was constructed by Shoreland sometime prior to 1989 to allow golfers to safely cross to the east and west sides of Shoreland's golf course. The culvert opening is 76 inches from the edge of the road pavement above and is five feet wide and seven feet high-big enough to allow golfers to ride golf carts through it. There are signs prohibiting snowmobiling on the golf course, but there are no such signs around the culvert. At the time of the accident, a small barricade was in place on the east side of County Road 21 above the culvert. Both the county and Shoreland contend that they did not erect the barricade, and the county acknowledges that the barricade does not meet its requirements for a traffic control device. The current county engineer, Darrell Pettis, testified that while the MNDOT transportation manual recommends that counties mark culverts larger than 42 inches in diameter, Le Sueur County does not generally mark off-road culverts. Former and current Le Sueur County engineers explained that the county established a policy not to mark off-road culverts because of a lack of financial resources and a belief that marking these objects created unnecessary risk and disregard for other, more important signs.

The district court granted respondents' summary judgment motion, finding that the ten-year statute of repose in Minn. Stat. § 541.051, subd. 1(a), barred appellant's action. In the same order, the district court denied the county's motion for summary judgment based on discretionary and official immunity. Appellant filed a notice of appeal, arguing that the district court erred when it found its claim was barred by the statute of repose. Respondent Le Sueur County filed a notice of review, arguing that the district court erred in denying summary judgment based on immunity.

## ISSUES

I. Did the district court err in holding that appellant's claim was time-barred by Minn.Stat. § 541.051, subd. 1(a)?

II. Did the district court err in holding that the county was not protected by discretionary and/or official immunity?

## ANALYSIS

### I

Appellant argues that the district court erred by granting respondents' summary judgment motion, finding that his claim was time-barred by the ten-year statute of repose in Minn.Stat. § 541.051, subd. 1(a) (2002).

When reviewing a grant of summary judgment, an appellate court must determine whether there are any genuine issues of material fact and whether the district court erred as a matter of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). An appellate court must view the evidence in the light most favorable to the nonmoving party. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994).

Construction and applicability of a statute of limitations is a question of law, which appellate courts review de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998). We construe Minn.Stat. § 541.051 narrowly, but still give effect to the plain language of the statute. *Pac. Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn. 1977) (superseded by statute on other grounds as stated in *O'Brien v. U.O.P., Inc.,* 701 F.Supp. 714 (D.Minn.1988)); *Kittson County v. Wells, Denbrook & Assoc.,*

308 Minn. 237, 240–41, 241 N.W.2d 799, 801 (1976).

Minn.Stat. § 541.051 provides in relevant part:

Subdivision 1(a). Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property ... shall be brought against any ... owner of the real property more than two years after discovery of the injury ... nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

. . . .

(c) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

Minn.Stat. § 541.051 (2002).

Appellant argues that his action was not time-barred by Minn.Stat. § 541.051, subd. 1(a), because it was preserved by the exception in Minn.Stat. § 541.051, subd. 1(c), which exempts from the statute actions resulting from negligence in the maintenance, operation, or inspection of the property. Specifically, Olmanson argues that Minn.Stat. § 541.051 does not relieve the owner or possessor of a property improvement of the common-law duty to warn of dangerous and unsafe conditions on the premises. We agree.

■ The county argues that the "maintenance" exception in subdivision 1(c) does not apply to Olmanson's claim because "maintain" means to keep in an existing state; there is no duty to build or add. *See Fisher v. County of Rock,* 580 N.W.2d 510, 512 (Minn.App.1998) (holding that adding sloping guardrails to a bridge designed and constructed without them was not "maintenance," but an "improvement" to real property), *rev'd on other grounds,* 596 N.W.2d 646 (Minn.1999). According to the county, there have never been warning signs next to the culvert and thus it had no duty to add them.[1]

The district court agreed and found that the subdivision 1(c) exception was not applicable in this case because respondents did not negligently maintain their property. The district court adopted the definition of maintenance in *Fisher* and ruled that:

From the time of its construction to the present day, the culvert has never contained any warning signs nor did the original design require markings for the ends of the culvert. Because the culvert was not designed or built with warning signs or devices, the County had a duty to maintain the culvert without such markings. "Maintenance" does not connote the addition of new components to what was originally built; rather, "maintenance" involves the upkeep of what already exists.... Accordingly, the Plaintiff's claimed damages cannot be characterized as resulting from negligent maintenance so as to fall under the "maintenance" exception to the statute of repose.

1. Although the county does not own the land where the culvert is located, by virtue of its prescriptive easement to use the land, the placement of the culvert entirely within that easement, and the county's general duty to maintain roads in a safe condition, the county is a "landowner" for purposes of the applicability of Minn.Stat. § 541.051. *See Johnson v. County of Nicollet,* 387 N.W.2d 209, 211–12 (Minn.App.1986). Moreover, the county has never disputed its status as a "landowner" in this case.

■ But the district court's reliance on *Fisher* is misplaced. First, in *Sullivan v. Farmers & Merchants State Bank of New Ulm*, 398 N.W.2d 592, 595 (Minn.App. 1986), *review denied* (Minn. Mar. 13, 1987), this court held that the exception in Minn. Stat. § 541.051, subd. 1(c), applied to claims where a landowner failed to warn or protect individuals from dangerous conditions on their land. *Id.* In *Sullivan*, a customer at a bank fell off a raised sidewalk and suffered injuries. This court stated that:

> The inclusion of [subd. 1(c)] in the 1980 version of the statute evinces a legislative intent to hold owners and possessors to the standard of care required at common law. The fact the risk results from defects in the design or construction of the property improvement does not relieve the owner or possessor of the duty to ensure the safety of persons using the premises through use of appropriate warnings.

*Sullivan*, 398 N.W.2d at 595. This court held that Sullivan's claim was not time-barred because it included an allegation of failure to warn of a dangerous condition on the land. *Id.* Moreover, a few months after the *Sullivan* decision, the Minnesota Supreme Court held that the intent of the exception in Minn.Stat. § 541.051, subd. 1(c), appeared to be to leave undisturbed the limitation period for ordinary landowner liability. *Ocel v. City of Eagan*, 402 N.W.2d 531, 534 (Minn.1987).

Next, the district court's reliance on *Fisher* is also misplaced because *Fisher* is factually distinguishable. In *Fisher*, this court distinguished a situation where the county failed to place *any* guardrail along a dangerous road from the actual situation in *Fisher*, where guardrails that were allegedly inadequate were in place. *Fisher*, 580 N.W.2d at 512. Here, as the county admits, it made no effort to mark or safeguard this known dangerous location.

■ Thus, based on *Sullivan* and *Ocel*, we are persuaded that Minn.Stat. § 541.051, subd 1(c), excludes from the ten-year statute of repose claims against a landowner that allege violation of the standard of care the landowner owed at common law, including claims for failure to warn of dangerous conditions on the land.[2]

---

2. The parties disagree on whether Olmanson was lawfully snowmobiling on respondents' property when he was injured. At oral argument, both counsel agreed that resolution of that issue was unnecessary here on appeal. In any event, we note that the Minnesota Supreme Court has held that a landowner has a duty "to use reasonable care for the safety of all ... persons invited upon the premises." *Sutherland v. Barton*, 570 N.W.2d 1, 7 (Minn. 1997) (quoting *Peterson v. Balach*, 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972)). This rule imposes the duty of reasonable care on both the landowner and the entrant. *Peterson*, 294 Minn. at 174, 199 N.W.2d at 647. The landowner has this duty regardless of whether the entrant is a licensee or an invitee. *Louis v. Louis*, 636 N.W.2d 314, 319 (Minn. 2001).

The supreme court has also adopted the rule set out in Restatement (Second) of Torts § 343A (1965), that a landowner is not liable for physical harm caused by a known or obvious danger, unless the possessor should anticipate the harm despite such knowledge or obviousness. *Baber v. Dill*, 531 N.W.2d 493, 495–96 (Minn.1995) (citing *Peterson v. W.T. Rawleigh*, 274 Minn. 495, 496–97, 144 N.W.2d 555, 557 (1966)) (quoting Restatement (Second) of Torts § 343A (1965)).

Further, generally, a landowner does not owe a duty to a trespasser. *Hanson v. Bailey*, 249 Minn. 495, 500, 83 N.W.2d 252, 257 (1957); Restatement (Second) of Torts § 333 (1965). But if the landowner knows or should know that a trespasser is present, then the landowner has a narrowly defined duty to use reasonable care for the safety of the trespasser while carrying on his activities, or to use reasonable care to warn the trespasser of the danger or risk involved. *Id.*; Restatement (Second) of Torts § 336 (1965). However, a landowner's duty of reasonable care does not extend to warn or protect against risks of

We agree with appellant's contention that Minnesota law makes clear that a possessor of land must do more than merely preserve its improvement in its original condition; there is an ongoing common-law duty to inspect and repair the premises, including a duty to warn persons using the premises of unreasonable risks of harm. While the *Sullivan* court did not identify whether this duty was incorporated in the term maintenance or inspection, we believe the duty is encompassed in both terms. Thus, in this case, the district court erred by solely focusing on the *Fisher* definition of maintenance, disregarding respondents' duty to warn as it relates to the landowner's operation or inspection of its property. Accordingly, because appellant included an allegation of failure to warn of a dangerous condition on the land, appellant's claim is not time-barred by the statute of repose.[3]

Respondent Shoreland argues that even if *Sullivan* does read a duty to warn into Minn.Stat. § 541.051, subd. 1(c), *Sullivan* is limited to cases where an individual is injured in a commercial setting. We disagree. We believe that the *Sullivan* duty to warn is not limited to commercial settings. While the appellant in *Sullivan* was injured in a commercial setting, nothing in the court's holding indicates that it was limited to commercial settings. *Sullivan* simply held that Minn.Stat. § 541.051, subd. 1(c), did not relieve landowners of the duty of care required of landowners at common law. *Sullivan*, 398 N.W.2d at 595.

In addition, respondent Le Sueur County argues that reading the common-law duty to warn into Minn.Stat. § 541.051, subd. 1(c), engulfs the statute of repose enunciated in Minn.Stat. § 541.051, subd

1(a), as applied to landowners. We disagree. The legislative history is instructive on this point. As originally enacted, Minn.Stat. § 541.051 protected architects, contractors, and suppliers from stale claims based on improvements to real property over which they no longer had any control. *See, e.g., Kittson County,* 308 Minn. at 241–42, 241 N.W.2d at 802. The statute did not protect landowners. But in 1977 the Minnesota Supreme Court ruled that excluding owners and possessors from the protection afforded by the statute had no rational basis and denied property owners of equal protection of the law. *Pac. Indem. Co.,* 260 N.W.2d at 555. In response to that case, the legislature amended the statute in 1980 to add "owners." 1980 Minn. Laws ch. 518 §§ 2–4. In the same session, the legislature added the "maintenance, operation or inspection" exception now found in Minn.Stat. § 541.051, subd. 1(c). *Id.* In 1987, the Minnesota Supreme Court had an opportunity to interpret subdivision 1(c), and it held that the intent behind the inclusion of this exception "appears to be ... to leave undisturbed the limitation period for ordinary landowner's liability." *Ocel,* 402 N.W.2d at 534.

Based on this legislative history, we are persuaded that the ten-year limitation period in Minn.Stat. § 541.051, subd. 1(a), is not "swallowed" by reading a duty to warn into the exception in subdivision 1(c) because the limitation period was never intended to relieve property owners of their common-law duty to warn of dangerous conditions on their premises. Therefore, we conclude that the trial court erred in holding that appellant's claim was time-

which the trespasser knew or should have known.

**3.** Whether respondents actually breached their duty to warn by not placing signs or

delineators around the culvert involves fact questions that should be decided by the trier of fact.

barred because appellant's claim is exempted from the statute of repose by the exception in Minn.Stat. § 541.051, subd. 1(c). Accordingly, we remand this case to the district court for further proceedings.

## II

*Discretionary Immunity*

Respondent Le Sueur County contends that the district court erred by denying its motion for summary judgment on its claim of discretionary immunity, also known as statutory immunity. Respondent argues that there was no legal mandate requiring the county to install warning signs, barricades, or delineators, and whether it should use such devices lies within the discretion of the county. The county claims that ultimately its decision to leave off-road culverts unmarked was established by balancing numerous policy considerations, and it is therefore immune from tort liability.

The district court found that respondent failed to present sufficient evidence to prove that the policy to leave off-road culverts unmarked was discretionary. Relying on *Conlin v. City of St. Paul,* 605 N.W.2d 396, 403 (Minn.2000), the court found that respondent only provided minimal averments in its affidavits supporting immunity and did not explain the "how" and "why" of adopting the policy. We agree.

■ The Minnesota Tort Claims Act holds governmental units liable for their torts and those of their officers, employees, and agents acting within the scope of their employment duties. Minn.Stat. § 466.02 (2002). But the statute enumerates an exception to the general rule for any claim based upon the "performance or the failure to exercise or perform a discretionary function or duty." Minn.Stat. § 466.03, subd. 6 (2002). Because discretionary immunity is an exception to the general rule of governmental liability it must be narrowly construed. *Koelln v. Nexus Residential Treatment Facility,* 494 N.W.2d 914, 919 (Minn.App.1993), *review denied* (Minn. Mar. 22, 1993). Whether governmental action is protected by statutory immunity is a question of law which this court reviews de novo. *Conlin,* 605 N.W.2d at 400. "The party asserting an immunity defense has the burden of demonstrating facts showing that it is entitled to immunity." *Fear v. Indep. Sch. Dist. No. 911,* 634 N.W.2d 204, 209 (Minn. App.2001), *review denied* (Minn. Dec. 11, 2001). Moreover, when we review a grant of summary judgment, we must view the evidence in the light most favorable to the non-moving party. *City of Mounds View,* 518 N.W.2d at 571.

■ Here, taking the facts in the light most favorable to appellant, we do not believe that respondent has met its burden of demonstrating facts that show it is entitled to immunity.

■ In *Conlin,* the Minnesota Supreme Court acknowledged there is a "gray area" dividing protected and unprotected decisions by governmental units. 605 N.W.2d at 400. Indeed, it is true that when reviewing a government action it can be hard to think of an act that does not use some level of discretion. Therefore, because of the difficulty in distinguishing between protected and unprotected decisions and the significant "gray area" involved in these determinations, it is essential that discretionary immunity protect the government *only when it can produce evidence* that its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely professional or scientific judgments. *Id.* (quoting *Steinke v. City of Andover,* 525 N.W.2d at 173, 175 (Minn.1994)).

In *Conlin* the court closely evaluated the process used to establish St. Paul's policy of when to respond to citizen complaints. In support of its claim that the decision was discretionary, the city submitted two affidavits. *Conlin*, 605 N.W.2d at 399. But the court found that "rather than explaining how and why a decision pertaining to the street sealing project was made and detailing the underlying considerations, [the city's] affidavits are conclusory. The affidavits merely identify generalized concerns … without incorporating specific facts demonstrating that a decision was in fact made." [4] *Conlin*, 605 N.W.2d at 402–03.

Similarly in *Fear*, 634 N.W.2d at 210–11, a school district submitted two affidavits to support a claim that its decision was a planning-level decision entitled to statutory immunity. This court explained that while the affidavits discussed factors the school district *might* have considered, they did not provide specific evidence of when and how the decision was actually made. *Id.* at 212.

■ Accordingly, we hold for immunity purposes it is essential that the county provide detailed evidence of how and when the county made a particular policy decision, including providing evidence of specific facts that the county considered in making its determination. We agree with respondent that the county need not necessarily adopt a written policy, but there must be evidence that there was a deliberative process that led to establishment of the policy in question.

■ Here, the county failed to produce even one specific fact concerning a deliberative process that led to a "policy" decision to leave off-road culverts unmarked. Instead, as counsel for respondent conceded at oral argument, the engineer's decision to leave off-road culverts unmarked more closely resembles an established practice merely passed down from one county engineer to the next. This is borne out by current engineer Pettis's deposition testimony that he was told of this policy by the "sign man." An engineer's action in following a practice because the county has always followed that practice is not enough to prove that the policy was established through a deliberative process weighing social, economic, and political factors.

■ Furthermore, even if we review the substance of respondent's claim, we conclude the county is not entitled to immunity. Indeed, discretionary immunity does not protect all decisions made by government agents. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722 (Minn. 1988). The courts distinguish between "operational decisions" and "planning decisions." *Watson v. Met. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996) (citing *Nusbaum*, 422 N.W.2d at 719). Because planning decisions involve questions of public policy, these decisions are immune as discretionary decisions, while operational decisions relate to the day-to-day operation of government and are not immune. *Steinke*, 525 N.W.2d at 175. The implementation of procedures through operational decisions that do not involve balancing of various policy considerations is not protected by discretionary immunity.

4. The *Conlin* court explained that while the affidavits showed the city considered "minimal public safety concerns" associated with the project, it did not explain what those concerns might be or how they factored into the decision. *Id.* Further, the court found that the city claimed residents would be inconvenienced by barricades, but did not explain how it arrived at this conclusion, and that while the city claimed it evaluated "financial considerations," it did not provide any specific documentation of this consideration. *Id.*

*Rico v. State,* 472 N.W.2d 100, 104 (Minn. 1991). Immunity protects only those discretionary acts that involve the "balancing [of] policy objectives such as economic, social, and political factors." *Christensen v. Mower County,* 587 N.W.2d 305, 307 (Minn.App.1998).

Here, the county provided three affidavits—one from the current Le Sueur County engineer and two from former county engineers. In these affidavits, the engineers stated that in establishing the policy to leave small off-road culverts unmarked, they considered the following: (1) placing objects in a culvert or ditch creates a greater hazard; (2) snow may cover the object and create a dangerous obstacle; (3) off-road objects present a limited risk to pedestrians; (4) overuse of signs can result in general disregard for all traffic control devices; (5) the county's limited financial resources; and (6) the culverts' lack of impact on the width or layout of the road. As in *Conlin,* however, these factors are theoretical and conclusory and appear to merely parrot the language that Minnesota courts have used in discretionary-immunity cases.

Further, many facts in the record contradict the engineers' affidavits. For example, Pettis's admission that the county will mark culverts if someone requests that the county mark a culvert contradicts the county's claim that this was a policy decided by the county after weighing various factors. In addition, the record establishes that the expense of marking this culvert could be as low as $200 for a delineator.[5]

Therefore, because the county failed to produce evidence to prove when and how the county went through a deliberative process balancing social, political, or economic considerations and not merely professional or scientific judgments to establish its policy, the county is not protected by discretionary immunity.

*Official Immunity*

■ Respondent Le Sueur County also argues that official immunity should protect its county engineer, and vicariously the county, because the policy to leave off-road culverts unmarked was established by current county engineer Pettis and his predecessors. The district court did not separately discuss the claim of official immunity. We review a district court's decision concerning official immunity de novo. *Johnson v. State,* 553 N.W.2d 40, 45 (Minn. 1996).

■ Official immunity is distinct from statutory immunity. In contrast to statutory immunity, official immunity determines whether individuals used discretion on an operational, rather than a policy-making, level. *Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn.1992); *Riedel v. Goodwin,* 574 N.W.2d 753, 758 (Minn.App. 1998), *review denied* (Minn. Apr. 30, 1998). Official immunity protects a government employee "from fear of personal liability that might deter independent action." *Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs,* 552 N.W.2d 711, 715 (Minn.1996) (citations omitted). For example, official immunity has often been employed to protect police, and vicariously their municipalities, when they use discretion to make an independent decision while in the line of duty. *See City of Mounds View,* 518 N.W.2d at 567; *Leonzal v. Grogan,* 516 N.W.2d 210 (Minn.App.1994), *review denied* (Minn. Jul. 27, 1994).

■ But the creation of a policy is a planning-level decision and not operational

---

5.  A delineator is a post with a reflective sign on it designed to warn traffic of the presence of a structure.

conduct protected by official immunity. *Riedel*, 574 N.W.2d at 758 (creation of mowing policy is a planning-level decision protected by statutory immunity not official immunity). Official immunity would protect the county official who makes a discretionary operational decision while implementing the policy established at the planning level. Here, the record does not reveal, and the county does not argue, that any county employee made a discretionary decision in implementing the county's practice to leave off-road and small culverts unmarked. Accordingly, the county's official immunity defense also fails.

### DECISION

We reverse the district court's decision to grant summary judgment in favor of respondents based on the finding that appellant's action was barred by the statute of repose. Because appellant's action includes an allegation of failure to warn of unsafe conditions on respondents' land, it avoids the statute of repose by the exception to the statute in section 541.051, subd. 1(c). Accordingly, we remand this case to the district court for further proceedings. We affirm the district court's decision to deny respondent Le Sueur County's summary judgment on discretionary immunity because respondent failed to provide evidence that it went through any deliberative process to establish a policy to leave off-road culverts unmarked. We also affirm the district court's decision to deny respondent Le Sueur County's summary judgment on its claim of official immunity because the record does not support the application of official immunity to the county.

**Affirmed in part, reversed in part, and remanded.**