David C. OLMANSON, Respondent,

v.

LeSUEUR COUNTY, Shoreland Recreational Cooperative, d/b/a Shoreland Country Club, Appellants.

No. A03–629.

Supreme Court of Minnesota.

March 31, 2005.

Noel L. Phifer, Gislason & Hunter, L.L.P., New Ulm, MN, for appellant Shoreland Recreational Cooperative d/b/a Shoreland Country Club.

Thomas P. Carlson, Carlson & Soldo, P.L.L.P., Vadnais Heights, MN, for appellant LeSueur County.

Kay Nord Hunt, Robert J. King, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

In this case we are asked to decide whether the 10–year statute of repose provision in Minn.Stat. § 541.051, subd. 1(a) (2004), applies to claims for negligence based on a landowner's common-law duty to inspect and maintain the property. The court of appeals held that the claims were not time-barred by the statute. We affirm.

Appellant Shoreland Recreational Cooperative (Shoreland) owns and operates an 18–hole golf course with golf holes on both sides of LeSueur County Road 21. Sometime prior to 1989, Shoreland designed and built a golf cart culvert under County Road 21 to allow golfers access to the golf course on both sides of the road. The opening of the culvert is 5 feet wide and 7 feet high and the top of the culvert is located 76 inches from the edge of the pavement on County Road 21. The east side of the culvert is marked by a 2–by–4 board on iron posts located above the culvert opening. Appellant LeSueur County (the county) and Shoreland do not know when the barricade was placed and who

placed it there. The culvert opening on the west side of County Road 21 is unmarked and unguarded. Shoreland acknowledges that it owns the property where the culvert is located, and the county acknowledges that it holds a prescriptive easement over the property, which entitles the county to use it for road purposes.[1]

In the afternoon and early evening of February 18, 2000, respondent David C. Olmanson went snowmobiling with friends in and around St. Peter, Minnesota. The snowmobilers rode primarily on trails and in the ditches along state and county roads, including County Road 21. On his way home, Olmanson was driving his snowmobile in the ditch on the east side of County Road 21. He decided to cross from the ditch on the east side of County Road 21 to the ditch on the west side. As he crossed the road and headed down the ditch, the snowmobile went off the edge of the golf cart culvert and struck the culvert's side wall. Olmanson was thrown from the snowmobile and injured.

Olmanson brought a negligence claim against the county and Shoreland in LeSueur County District Court. The county and Shoreland moved for summary judgment, arguing that the statute of repose for improvements to real property, Minn. Stat. § 541.051, barred Olmanson's suit, and that neither the county nor Shoreland had a duty to warn entrants of the existence of the culvert. The county also claimed statutory and official immunity. The district court denied summary judgment based on immunity and failure to warn, but granted summary judgment based on the statute of repose. The court of appeals affirmed the denial of summary

judgment based on immunity but reversed the grant of summary judgment based on the statute of repose, holding that under the statute of repose, the duty to warn is inherent in a landowner's duty both to maintain and inspect. *Olmanson v. LeSueur County*, 673 N.W.2d 506 (Minn.App. 2004). We granted review on the issue of the statute of repose. We affirm the decision of the court of appeals.

## I.

 This case comes before us on an appeal from summary judgment. On appeal from summary judgment, we must determine whether there are any genuine issues of material fact, and whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990); *see also* Minn. R. Civ. P. 56.03. The construction of a statute is a question of law, which this court reviews de novo. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 128 (Minn.1990).

 When determining the meaning of a statute, we are guided by several principles of statutory construction. Our primary object is to interpret and construct laws so as to ascertain and effectuate the intention of the legislature. *Mankato Citizens Tel. Co. v. Comm'r of Taxation*, 275 Minn. 107, 111, 145 N.W.2d 313, 317 (1966); Minn.Stat. § 645.16 (2004). When the words of a statute are clear and free from all ambiguity, this court looks only to its plain language. *Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 736 (Minn.2000). If a statute is ambiguous, the construction that avoids constitutional problems should be used, even if such a construction is less natural.

---

1. The parties have not made an issue of the county's legal status as owner with regard to the culvert for purposes of summary judgment. Therefore, because it retains control of the culvert as an easement holder, we treat the county as a property owner in this opinion.

*State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981).

Minnesota Statutes § 541.051 (2004), is a statute of repose for injuries arising out of real property improvements.[2] The pertinent statutory language is as follows:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury * * * nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

\* \* \* \*

(c) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

Minn.Stat. § 541.051, subd. 1.

Shoreland and the county argue that the language of subdivision 1(a) is clear and unambiguous and operates to expressly bar Olmanson's claim. They reason that

(1) the golf cart culvert was completed more than 10 years before Olmanson's accident; (2) the culvert is an improvement to real property; (3) Olmanson's claim is against the owners of the culvert; and (4) Olmanson's claim arises out of the defective and unsafe condition of the culvert. Under these facts, appellants contend, subdivision 1(a) explicitly bars Olmanson's claim.

Olmanson asserts that his injury arose from the county and Shoreland's negligence in inspecting the culvert and their resulting failure to notice that it was dangerous. Olmanson argues that had Shoreland and the county properly inspected the culvert, they would have known that the roadside ditch was commonly used by snowmobiles, and that the culvert created a dangerous condition because it was unguarded and unmarked. Olmanson argues that subdivision 1(c), the "maintenance, operation or inspection" exception, applies to preserve his claim. Specifically, Olmanson claims that this exception preserves the common-law duty of reasonable care owed by landowners to entrants, as evidenced by the use of negligence terminology in the subdivision.

■■■■ We agree with Olmanson's interpretation of Minn.Stat. § 541.051. It is well established in our jurisprudence that a landowner has a duty to use reasonable care for the safety of all entrants upon the premises. *Louis v. Louis,* 636 N.W.2d 314, 318 (Minn.2001); *Pietila v. Congdon,* 362 N.W.2d 328, 332–33 (Minn.1985); *Peterson v. Balach,* 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972). The landowner's

---

**2.** As this court has explained, "[a] statute of repose starts the limitation period for bringing an action from the date of [completion of an improvement], unlike a statute of limitations which starts from the date of injury. A typical statute of repose will specify a presumptive number of years after which an action cannot be brought." *Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 830 (Minn.1988). Section 541.051 specifies a limitation period barring suit more than 10 years after substantial completion of a real property improvement.

duty of reasonable care is modified according to the expected use of the land, and the entrant also has a duty of reasonable care, which varies according to the circumstances under which he enters the land. *Peterson,* 294 Minn. at 174, 199 N.W.2d at 647.[3] However, the landowner's duty of reasonable care includes an ongoing duty to inspect and maintain property to ensure entrants on the landowner's land are not exposed to unreasonable risks of harm. *Pietila,* 362 N.W.2d at 332–33; *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 401 (Minn.1981) (owner has duty to inspect, warn). If dangerous conditions are discoverable through reasonable efforts, the landowner must either repair the conditions or provide invited entrants with adequate warnings. *See Bonniwell v. St. Paul Union Stockyards Co.,* 271 Minn. 233, 238, 135 N.W.2d 499, 502 (1965); Restatement (Second) of Torts § 343 cmt. d (1965) ("[An entrant] is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein."). If a reasonable inspection does not reveal a dangerous condition, such that the landowner has neither actual nor constructive knowledge of it, under the theory of negligence the landowner is not liable for any physical injury caused to invited entrants by the dangerous condition. *See Hanson v. Christensen,* 275 Minn. 204, 212, 145 N.W.2d 868, 873–74 (1966).

The common-law duty to inspect, repair, and warn is not absolute. This court has adopted Restatement (Second) of Torts § 343A, subsection (1), which states: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965); *Baber v. Dill,* 531 N.W.2d 493, 495–96 (Minn.1995) (citing *Peterson v. W.T. Rawleigh Co.,* 274 Minn. 495, 496–97, 144 N.W.2d 555, 557–58 (1966) (expressly approving Restatement (Second) of Torts § 343A)). Generally, whether a condition presents a known or obvious danger is a question of fact. *See, e.g., Louis,* 636 N.W.2d at 321–22 (holding that summary judgment was not appropriate because whether the danger posed by a swimming pool was known or obvious was a fact question). Whether the possessor could anticipate the danger is also a fact question. *See Adee v. Evanson,* 281 N.W.2d 177 (Minn.1979) (granting a new trial on the issue of liability where the original jury instructions omitted language imposing liability on the landowner if harm could be anticipated despite obviousness of danger). Under common law, then, several questions of fact would preclude summary judgment in the instant case.

The county and Shoreland, as owners of the land, had an ongoing duty under common law to use reasonable care for the safety of entrants on their land, including the duty to inspect their premises for dangerous conditions and to repair them or warn entrants about them. The statute of repose does not bar claims that this duty has been breached, because under the

---

3. The parties disagree as to the entrant status of Olmanson. The county and Shoreland assert that he was a trespasser, while Olmanson claims that since snowmobiles are legally entitled to use roadside ditches, he was a licensee. In the context of summary judgment, we must view the facts in the light most favorable to Olmanson, the party against whom the motion for summary judgment was granted. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). For purposes of this opinion, then, we consider Olmanson a licensee.

plain language of Minn.Stat. § 541.051, subd. 1(c), owners or other persons in possession retain their ordinary landowner liability for negligent maintenance, operation, and inspection of real property improvements. We hold that the district court erred in granting summary judgment in favor of the county and Shoreland based on its conclusion that Olmanson's claim was barred by the statute of repose.

■ The county and Shoreland argue that because they inspected and maintained the culvert in a manner adequate for its use as a golf cart tunnel, they cannot be held liable for negligent inspection or maintenance caused by an unintended use. We agree with this basic premise but do not conclude as a matter of law that the use of the land for a snowmobile trail was an "unintended use." Rather, this is a fact question to be left for determination by the fact finder.

## II.

The county and Shoreland assert that if Minn.Stat. § 541.051 does not protect them, they are effectively being denied equal protection of the law because the benefit of the statute is given to persons who construct or design improvements to real estate, but denied to owners. They argue that we concluded that an earlier version of the statute of repose was unconstitutional for this very reason; i.e., that the statute time-barred certain claims against construction professionals while allowing those same claims to go forward against owners. We begin our analysis of this constitutional argument with a brief history of the statute of repose and this court's decisions with respect to the statute.

The Minnesota Legislature enacted section 541.051 in 1965. Act of May 21, 1965, ch. 564, § 1, 1965 Minn. Laws 803. As originally enacted, the statute barred suits against any person involved with the design, planning, supervision, or observation of construction, or performing the construction of a real property improvement (hereafter construction professionals) after 15 years. It made no reference to suppliers of materials, and it explicitly allowed the exception for owners of real property improvements: "This [section] shall not be applied in favor of any person in actual possession and control as owner, tenant, or otherwise * * * at the time the defective and unsafe conditions of such improvement constitutes the proximate cause of the injury * * *." *Id.*

We first examined the statute in *Kittson County v. Wells, Denbrook & Associates, Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976). At that time, this court concluded that its enactment was apparently a legislative reaction to the erosion of the privity of contract doctrine, which threatened to greatly expand the liability of construction professionals. *Id.* at 241, 241 N.W.2d at 801–02. The statute limited the liability of these construction professionals by establishing an outer time limit beyond which they could not be held liable for design and construction defects. *Id.* at 242, 241 N.W.2d at 802. The legislature thus granted broad protection to construction professionals not available to owners of real property improvements.

In 1977, we took up the constitutionality of excluding owners and materials suppliers from the class protected by the statute. *Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 555 (Minn.1977). At the time *Pacific Indemnity* was decided, the statute of repose protected construction professionals but allowed suit against property owners. In *Pacific Indemnity*, a fire caused by a negligently-installed furnace destroyed part of a shopping mall. *Pacific Indem. Co.*, 260 N.W.2d at 551–52. At trial, the jury found the furnace instal-

ler 80 percent negligent, the store tenant 10 percent negligent, and the furnace servicing company 10 percent negligent. *Id.* at 552. The trial court found that the furnace was not a real property improvement, and that therefore section 541.051 was inapplicable. *Id.* at 553. The servicing company appealed. *Id.*

This court first held that the furnace was a real property improvement for purposes of section 541.051. *Id.* at 554. Next, this court noted that the legislature may create separate classes, but "[l]egislative classifications must apply uniformly to all persons who are similarly situated, and the distinctions which separate those who are included within a classification from those who are not must be natural and reasonable, not fanciful and arbitrary." *Id.* at 555 (*citing Schwartz v. Talmo,* 295 Minn. 356, 361, 205 N.W.2d 318, 322 (1973)). Otherwise, the classification fails on equal protection grounds. Noting that a majority of states had upheld the constitutionality of similar statutes on equal protection grounds,[4] this court nonetheless determined that the better reasoned position "is embodied in the decisions which hold such statutes to be unconstitutional because they grant an immunity from suit to a certain class of defendants, without there being a reasonable basis for that classification." *Pacific Indem. Co.,* 260 N.W.2d at 555.

In 1980, the Minnesota legislature responded to *Pacific Indemnity* by amending section 541.051 to add property owners and materials suppliers to the class protected by the statute of repose for claims of design and construction defects. Act of April 7, 1980, ch. 518, §§ 2–4, 1980 Minn. Laws 595–96; *see Calder v. City of Crystal,* 318 N.W.2d 838, 842–43 (Minn.1982). In the same session, the legislature added what is now section 541.051, subdivision 1(c), excepting claims of negligent maintenance, operation, or inspection against the property owner and other persons in possession from the protection of the statute. Act of April 7, 1980, ch. 518, §§ 2–4, 1980 Minn. Laws 595–96. A later amendment shortened the limitation period to its present duration of 10 years.

██ This brings us to the question at hand. Does the 1980 amendment and our reading of it in Section I create the same classification between construction professionals and owners that was found to be unconstitutional in *Pacific Indemnity?* We think not. In *Pacific Indemnity* we held that it was irrational to give statute of repose protection for claims against construction professionals while denying that protection to landowners. We did not conclude that all claims against construction professionals and landowners must be treated *identically* in order to withstand an equal protection challenge. As discussed above, landowners and other persons in possession of land have historically been liable for claims that arise from their possession in the land; i.e., the obligation to inspect and maintain the premises. Construction professionals who have relinquished control of the land do not have a duty to inspect and maintain the premises. Owners and possessors, not construction professionals, are obligated to inspect and maintain the premises once construction is

---

**4.** At the time *Pacific Indemnity* was decided, 10 states had upheld construction statutes of repose, while five states had struck them down. *Pacific Indem.,* 260 N.W.2d at 555. A 1990 decision by the Supreme Court of Ohio lists 21 states that have upheld construction statutes of repose on equal protection grounds. *Sedar v. Knowlton Const. Co.,* 49 Ohio St.3d 193, 551 N.E.2d 938, 948 (1990). The *Sedar* court listed five states (other than Minnesota) that have struck down similar statutes on equal protection grounds. *Id.* at 945 n. 6.

completed. To permit claims for negligent inspection and maintenance to proceed against those in possession while barring such claims against construction professionals not in possession is a natural and reasonable distinction. The legislature made clear this distinction in plain and unambiguous language. We conclude that owners and possessors are not denied equal protection of the law if we hold them liable for their common-law duties to inspect and maintain their real property improvements.

Affirmed.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully disagree with the court's holding that the plain language of Minn. Stat. § 541.051, subd. 1(c) (2004), preserves a landowner's or land possessor's common law liability for improvements to real property after the 10–year time limit set out in subdivision 1(a) has passed.

In *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977), we held the predecessor to the current version of Minn.Stat. § 541.051 unconstitutional because it "violate[d] constitutional provisions which forbid immunity from suit to a limited class of defendants without there being a reasonable basis for such classification." 260 N.W.2d at 550. The classification in question involved those who "perform[ ] or furnish[ ] the design, planning, supervision, or observation of construction or construction of such improvements to real property" and did not include the owner of the real property. *Id.* at 553. In response to *Pacific Indemnity*, the legislature amended the statute to include the owner of the real property upon which the improvement was made. *See* Act of Apr. 7, 1980, ch. 518, §§ 2–4,

1980 Minn. Laws 595–96. As a result, the constitutional infirmity that we identified was eliminated. By today's decision, the court backtracks and again gives life to the classification we struck down in *Pacific Indemnity*.

The part of the statute we struck down in *Pacific Indemnity* read:

This limitation shall not be applied in favor of any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe conditions of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

*Pacific Indem. Co.*, 260 N.W.2d at 553 (quoting Minn.Stat. § 541.051, subd. 1 (1976)).

The pertinent part of the statute that we construe today reads:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property,* * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property *or against the owner of the real property* more than two years after discovery of the injury or, in the case of an action for contribution or indemnity, accrual of the cause of action, nor, in any event shall such a cause of action accrue *more than ten years after substantial completion of the construction.* Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use

the improvement for the intended purpose.

\* \* \* \*

(c) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

Minn.Stat. § 541.051, subd. 1(a), (c) (2004) (emphasis added).

When we construe statutes:

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) the occasion and necessity for the law;

(2) the circumstances under which it was enacted;

(3) the mischief to be remedied;

(4) the object to be attained;

(5) the former law, if any, including other laws upon the same or similar subjects;

(6) the consequences of a particular interpretation;

(7) the contemporaneous legislative history; and

(8) legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (2004).

In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

(3) the legislature does not intend to violate the Constitution of the United States or of this state;

(4) when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language.

Minn.Stat. § 645.17 (2004). We have also said that when construing the statute of repose, we "strive to give effect to the plain meaning of the words of the statute without resort to technical legal constructions of its terms." *Pacific Indem. Co.,* 260 N.W.2d at 554.

Applying their plain meaning, the words of Minn.Stat. § 541.051 bar claims against any person performing the construction of an improvement to real property or the owner of the improved real property for injuries arising from the "*defective and unsafe* condition of an improvement to real property" that accrue more than 10 years after the improvement is substantially completed. Minn.Stat. § 541.051, subd. 1(a) (2004) (emphasis added). Because the statute begins to run at the substantial completion of the improvement, the condition triggering the statute is not just any condition of the property, but only those conditions that are both "defective and unsafe" and in existence at the time construction of the improvement is substantially completed.

Subdivision 1(c) of section 541.051 creates an exception to the 10–year time limit. That exception applies "to actions for damages resulting from negligence in the maintenance, operation or inspection of the

real property improvement" by the property's owner. Put another way, the exception applies to the "maintenance, operation, and inspection of the real property improvement" after completion and not to the "defective and unsafe condition" of the improvement as completed. Reading subdivision 1(c) in conjunction with subdivision 1(a), it is clear that the legislature intended to hold an owner liable only for those changes to the real property improvement that arise from the owner's negligent actions *after* the construction of the improvement is completed and not for those conditions already in existence at the time the improvement was substantially completed. Simply put, with respect to the defective and unsafe conditions existing at the substantial completion of construction, owners enjoy the same statutory protection as construction professionals. Applying our rules of statutory construction, any other reading of Minn.Stat. § 541.051, subd. 1(c), would render subdivision 1(a) meaningless, violate our holding in *Pacific Indemnity*, and render the statutory scheme unconstitutional.

Thus, to the extent that Olmanson's claim is that his injuries arose out of the defective and unsafe condition of the culvert as constructed, his claim is barred by Minn.Stat. § 541.051, subd. 1(a), because the record before us establishes that the culvert's alleged defective and unsafe condition was inherent in the culvert's construction and existed at the time of the culvert's substantial completion and because the improvement to the real property, the culvert, was substantially completed more than 10 years before Olmanson's snowmobile accident. I would, therefore, reverse the court of appeals' decision and reinstate the trial court's grant of summary judgment in favor of appellants.