William R. and Mary Lou
BABER, Respondents,

v.

Mike DILL, Petitioner, Appellant.

No. C1–93–1075.

Supreme Court of Minnesota.

May 19, 1995.

**494**

Jerrold M. Hartke, Rolin L. Cargill, III, The Hartke Law Firm, South St. Paul, for appellant.

Mark A. Gwin, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Minneapolis, for respondents.

Wilbur Fluegel, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for amicus curiae Minnesota Trial Lawyers Ass'n.

William Hart, Joseph W.E. Schmidt, Meagher & Geer, Minneapolis, for amicus curiae Minnesota Defense Lawyers Ass'n.

Heard, considered, and decided by the court en banc.

## OPINION

TOMLJANOVICH, Justice.

On July 16, 1989, while working on property owned by Mike Dill, William Baber slipped, fell, and was impaled on a steel reinforcing rod. William Baber and his wife, Mary Lou Baber brought this lawsuit against Mike Dill alleging negligence and damages resulting from personal injuries that William Baber sustained. At the close of the Babers' case in chief, the trial court directed a verdict in favor of Dill, principally on the conclusion that William Baber's actions constituted primary assumption of the risk. Further, the trial court also determined Dill did not owe a duty to William Baber. The court of appeals reversed the trial court's judgment, finding a genuine issue of material fact existed regarding whether William Baber had primarily assumed the risk. On appeal to this court, Dill contends the court of appeals erred as a matter of law by concluding that primary assumption of the risk did not bar the Babers' action against him. Without reaching the issue of whether William Baber's conduct constitutes primary assumption of the risk, we reverse.

In July 1989 Mike Dill retained Donald Baber to build a retaining wall on Dill's property and dredge a channel fronting the retaining wall. Donald Baber hired his brother William Baber to help with this job. On July 15, 1989, the Babers began constructing the retaining wall. At the end of the day, the wall consisted of three tiers of treated timbers held together by approximately 20 to 30 half inch wide reinforcing rods. Between four to seven rods protruded 10 to 14 inches above the wall. The rods protruded because a decision had not been made whether to add a fourth tier of timbers to the wall. Donald Baber testified that as it became dark, he was concerned about the protruding rods and the danger they posed to neighborhood children. Within earshot of

William Baber, Mike Dill and Donald Baber discussed the advantages and disadvantages of adding another tier. Dill decided to think about it overnight and told Donald Baber to leave the bars exposed and protruding until the next morning. William Baber testified that he overheard this conversation. In addition, William Baber testified that he considered the protruding rods to be dangerous and he knew the mud-caked wall was slippery.

The next morning, before a decision on the fourth tier was reached, Donald Baber began dredging the channel next to the retaining wall with a backhoe. He operated the backhoe from behind the retaining wall with the bucket descending beyond the wall down into the channel. Because he could not see over the retaining wall, Donald motioned to William to help direct the position of the bucket with hand signals. William testified that he stood on the retaining wall to get a better vantage point. Periodically, he stood with one foot on the wall and the other foot on the ground. He also testified that the exposed rods could easily have been covered with timbers or a pail or can. After the dredging proceeded for about 30–45 minutes, the bucket jerked unexpectedly, William was startled and he fell impaling himself on an exposed rod.

William Baber and his wife sued Mike Dill for negligence for failing to warn or repair a dangerous condition on his property. A jury trial commenced on December 7, 1992. At the close of the Babers' case, the trial court directed a verdict in Dill's favor, concluding William Baber's actions constituted primary assumption of the risk because he knew and appreciated the danger the rods posed and he could have avoided the risk, but voluntarily chose to chance it. The trial court also concluded:

> In addition to the finding of primary assumption of the risk, the Court has considered the evidence and found that [Dill] did not owe a duty to [William Baber] to protect him from the risk which was perceived by [William Baber] * * *.

On appeal, the court of appeals reversed the trial court's judgment concluding facts were in dispute, and thus the question of assumption of the risk was for the jury. The court of appeals did not address the issue of whether Dill had a duty to William Baber. On appeal to this court, Dill contends the court of appeals erred by finding that primary assumption of the risk did not bar the Babers' action.

■ An appellate court reviewing a directed verdict must independently determine whether an issue of fact exists when the evidence is viewed in a light most favorable to the nonmoving party. *Nemanic v. Gopher Heating & Sheet Metal, Inc.*, 337 N.W.2d 667, 669–70 (Minn.1983). If fact questions exist, a directed verdict is reversible error. *Kolatz v. Kelly*, 244 Minn. 163, 166, 69 N.W.2d 649, 652 (1955).

■ The issue submitted to this court for review is whether William Baber had primarily assumed the risk of the harm that ultimately befell him. Although we acknowledge that application of the doctrine of assumption of the risk is confusing and has led to seemingly inconsistent decisions, we decline to examine the doctrine because this case does not require its application. Before a court considers assumption of risk, it should first determine whether the defendant owed a duty to the plaintiff. If no duty exists there is no need to determine whether a person assumed the risk thus relieving the defendant of the duty. Although that may seem elementary, because the trial court indicated it considered whether a duty existed, only after it had resolved the case on the basis of assumption of the risk, and the court of appeals did not address it at all, we reiterate the primacy of this consideration.

■ Analysis of a cause of action against a landowner for negligence begins with an inquiry into whether the landowner, Dill, owed the invitee, William Baber, a duty. We have adopted the rule set out in *Restatement (Second) of Torts* § 343A (1965), which reads:

> A possessor of land is not liable to his invitee for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the

harm despite such knowledge or obviousness.

*Peterson v. W.T. Rawleigh, Co.*, 274 Minn. 495, 496–97, 144 N.W.2d 555, 557 (1966) (quoting *Restatement (Second) of Torts* § 343A (1965)). Under this rule a landowner has a continuing duty to protect an entrant from harm, however, this duty is not absolute. Thus, even for obvious dangers, a possessor has a duty to warn if harm to an invitee should be anticipated despite the obviousness of the danger. *Id.*, 274 Minn. at 497, 144 N.W.2d at 557–58 (defendant had a duty to make safe or warn of the anticipated slippery conditions on his premises); *Betzold v. Sherwin*, 404 N.W.2d 286, 289 (Minn.App. 1987), *pet. for rev. denied*, (Minn. June 25, 1987) (holding "[a] landowner is not relieved of the duty to warn at night merely because a condition is open and obvious during the day").

A possessor of land, however, has no duty to an invitee where the anticipated harm involves dangers so obvious that no warning is necessary. 274 Minn. at 497, 144 N.W.2d at 558. *See e.g., Sperr v. Ramsey County*, 429 N.W.2d 315, 317–18 (Minn.App.1988) (holding no duty exists to protect pedestrian of low hanging branch that is clearly visible), *pet. for rev. denied*, (Minn. Nov. 23, 1988); *Lawrence v. Hollerich*, 394 N.W.2d 853, 856 (Minn.App.1986) (holding steepness of the hill so obvious no warning was required), *pet. for rev. denied*, (Minn. Dec. 17, 1986); *Bisher v. Homart Dev. Co.*, 328 N.W.2d 731, 733–34 (Minn.1983) (holding no duty to warn patrons about a large planter because it presented an obvious danger); *Hammerlind v. Clear Lake Star Factory Skydiver's Club*, 258 N.W.2d 590, 593–594 (Minn.1977) (holding a lake was an obvious danger to parachutists); *Munoz v. Applebaum's Food Market, Inc.*, 293 Minn. 433, 434, 196 N.W.2d 921, 921–22 (1972) (holding store owner had no duty to warn of dangers associated with a pool of water that was 20 feet square and one-quarter inch deep because "[t]he dimensions of the pool were such that the hazard was obvious and no other warning was required for defendant"). The rationale underlying this rule is that "no one needs notice of what he knows or reasonably may be expected to know." *Sowles v.*

*Urschel Lab., Inc.*, 595 F.2d 1361, 1365 (8th Cir.1979).

 The difference between open and obvious dangerous activities and conditions for which the possessor should anticipate harm and those activities and conditions for which the possessor should not anticipate harm because they are so open and obvious is a fine one, but one that we choose to make. In the present case, we conclude a landowner has no duty to an invitee to warn or make safe known and obvious conditions when that invitee has assisted in creating those conditions. Therefore Dill had no duty to William Baber. To hold a landowner has a duty to warn an invitee of danger created, in part, by that individual is untenable.

We reverse the judgment of the court of appeals and reinstate the order of the trial court.

COYNE, J., took no part in the consideration or decision of this case.