Jane DOE, Respondent,

v.

BRAINERD INTERNATIONAL RACE-WAY, INC., North Country Security, Inc., Petitioners, Appellants.

No. C4–93–1734.

Supreme Court of Minnesota.

June 30, 1995.

STATE of Minnesota, Respondent,

v.

### ORDER

James M. Sherburne, Sherburne Law Offices, Minneapolis, for respondent.

Robert G. Haugen, Johnson & Lindberg, Minneapolis, for appellant Brainerd Intern. Raceway, Inc.

Richard L. Pemberton, Jr., W.C. Flaskamp, Meagher & Geer, Minneapolis, for appellant North Country Sec., Inc.

## OPINION

GARDEBRING, Justice.

This appeal arises out of an action brought by Jane Doe ("plaintiff"), a minor at the time of the events at issue, alleging that Brainerd International Raceway ("BIR") and its secu-

rity firm, North Country Security ("NCS"), breached their duty to her by failing to prevent the harm to her which occurred as a result of her involvement in a wet T-shirt contest. The contest turned into a sexual performance in which the plaintiff participated. The outcome of the case turns on the extent of the duty owed by a landowner and operator of a place of amusement to a trespasser in a civil cause of action for injuries resulting from the criminal activity of third parties. We reverse the court of appeals and hold that a landowner does not have a duty of care to a trespasser when the trespasser knows or should be aware of the risks involved and helped create the risks.

In 1988 the annual Quaker State Northstar National Drag Race was held at BIR from August 17 through August 20. BIR contracted with NCS to perform security activities at the event. Management of BIR and NCS met on several occasions to discuss security plans for the 1988 event. NCS president Keith Emerson (Emerson) testified that at the security planning meetings, everyone was aware of the 1987 wet T-shirt contest, which involved complete nudity. BIR and NCS agreed upon a security plan which called for preventing a wet T-shirt contest from taking place on the premises.

The wet T-shirt contest was planned and organized by Jeffrey Borden and Gregory Peterson, spectators at the drag racing event, neither of whom was employed by BIR or NCS. Borden stated that he arrived at the raceway on August 16, 1988, and spoke with Emerson about having the contest. Borden claimed that Emerson approved the holding of the wet T-shirt contest. In preparation for the contest, Borden distributed printed fliers with the time and location of the contest, rented a scaffolding to construct a stage, placed an ice cream bucket with a sign to solicit donations for the contest and hung a banner in the trees which announced that at 8 p.m. on Saturday, August 20, there would be a wet T-shirt contest on the premises.

Emerson learned on Saturday afternoon that the wet T-shirt contest was planned for 8 p.m. in "the zoo," the general camping area at BIR.[1] When Emerson received a message over his portable radio that the contest had begun, he told his security officers to observe the area until he got there. By the time Emerson assembled additional security guards and arrived at the scene, the crowd was disbursing and no action was taken.

At the time of the event, plaintiff was one month away from her seventeenth birthday. A couple of months earlier, in June of 1988, she had participated in a bikini contest and a wet T-shirt contest in Fountain City, Wisconsin. Neither of these contests involved any nudity. Plaintiff ran away from her home in Winona to attend the Brainerd races with three friends, arriving in Brainerd on Friday, August 19, 1988. Without paying the admission fee, she obtained a pass and entered BIR's premises. NCS and BIR knew that it was common for people to enter the premises without paying for an admission pass.

Plaintiff spent Friday evening drinking and partying. On Saturday, plaintiff began drinking vodka and orange juice at 11 a.m. and continued drinking one drink every half hour until 7 p.m. Plaintiff also inhaled an unknown amount of cocaine throughout the day. Sometime on Saturday, plaintiff learned about a wet T-shirt contest to be held that evening on the BIR premises. She was told that winners of the contest would be awarded a trophy and cash prizes.

Plaintiff voluntarily entered the wet T-shirt contest which began with water being poured over the front of the contestants' shirts. Within fifteen minutes contestants began stripping. At that point, most of the contestants left the stage, but the four or five women remaining on stage continued a sexual performance which included complete nudity and oral sex. The crowd, predominantly men, was estimated at more than two thousand. The contest lasted approximately one hour.

---

1. Activities in "the zoo" area ranged from excessive drinking to the burning of cars and explosion of dynamite, pipe bombs and fireworks. This area was a popular gathering place for people to camp and party. Security guards warned paramedics that it was dangerous to enter "the zoo" and advised them not to enter the area to help injured people.

While on stage plaintiff exposed her breasts to the crowd, lifted her dress, took her shirt off, took her skirt off and dropped her G-string. Plaintiff also accepted beer from the audience and periodically blew kisses and waved to the crowd. Peterson lifted plaintiff into the air several times. The sexual performance on stage between Peterson and plaintiff included digital penetration and oral sex. Plaintiff testified that although she was not forced into her actions on stage, Peterson encouraged her to continue with the sexual display so that she could win the contest. She testified that she was drunk and high on cocaine during the contest, but was aware that she was on stage in front of an audience.

Borden and Peterson were criminally prosecuted and convicted of using minors in a sexual performance in violation of Minn.Stat. § 617.246, subd. 2 (1988). Plaintiff brought a negligence action against BIR and NCS resulting from the wet T-shirt contest. The trial court granted summary judgment for defendants, concluding that defendants owed no duty to plaintiff and that the proximate cause of any injury was her own voluntary action. The court of appeals reversed, finding both a common law duty and a statutory duty arising out of Minn.Stat. § 617.246.

■■■ In order to prevail on her negligence claim, plaintiff must show: (1) a duty; (2) a breach of that duty; (3) causation; and (4) compensable injury. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). We begin with the question of whether a duty exists at all under these facts.[2] Such a duty may be a matter of common law or may arise under a statute. We consider first whether the criminal statute, Minn.Stat. § 617.246, subd. (2) (1988), imposes any duty of care upon defendants. Minn.Stat. § 617.246 provides, in relevant part:

**2.** In light of our analysis on the issue of duty, we need not reach BIR's argument concerning whether NCS was an agent or an independent contractor.

**3.** Under some circumstances this court has looked to a criminal statute for the standard of care to be applied in a civil negligence action. *Kronzer v. First National Bank of Minneapolis,*

Subd. 2. Use of minor. It is unlawful for a person to promote, employ, use or permit a minor to engage in * * * any sexual performance if the person knows or has reason to know that the conduct intended is a sexual performance.

"Sexual performance" is defined as:

any play, dance or other exhibition presented before an audience or for purposes of visual or mechanical reproduction which depicts sexual conduct as defined by clause (e).

(e) "Sexual conduct" means any of the following if the depiction involves a minor:

(i) An act of sexual intercourse, normal or perverted, actual or simulated, including * * * oral-genital intercourse * * *.

\* \* \* \* \* \*

(iii) Masturbation or lewd exhibitions of the genitals.

(iv) Physical contact * * * with the clothed or unclothed pubic areas * * * whether alone or between members of the same or opposite sex * * *.

Minn.Stat. § 617.246, subd. 1 (1988).

Minn.Stat. § 617.246 plainly imposes a criminal penalty upon those who use a minor in a criminal performance, but BIR and NCS personnel were not charged with violating its provisions. However, the statute might be relevant in one of two other ways: it might itself create a civil cause of action or it might provide the standard of care to be applied where a common law duty exists.[3] Recently we held that "[p]rinciples of judicial restraint preclude us from creating a new statutory cause of action that does not exist at common law where the legislature has not either by the statute's express terms or by implication provided for civil tort liability." *Bruegger v. Faribault*, 497 N.W.2d 260, 262 (Minn.1993). In the present case, the statute is a criminal provision which, by its plain language, does

305 Minn. 415, 235 N.W.2d 187 (1975); *Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973); *Dart v. Pure Oil Co.*, 223 Minn. 526, 27 N.W.2d 555 (1947). However, in those cases the defendants in the civil action had violated the criminal statute at issue. Here, as noted, defendants were not prosecuted for violation of the criminal statute.

not expressly or impliedly create a tort duty. In fact, the legislative history of the statute clearly supports our interpretation. In 1992, four years after the events leading to this case, the legislature specifically adopted a provision authorizing a civil action based on the use of a minor in sexual performances. *See* Minn.Stat. § 617.245 (1992). Certainly if the legislature had intended Minn.Stat. § 617.246 (1988) to create a civil cause of action, then it would not have needed to enact the subsequent statute. Thus, we must turn to common law to determine whether defendants owed plaintiff a duty to protect her against the criminal acts of third parties.

▇▇▇ Generally, there is no duty to control the conduct of a third person to prevent physical harm to another. *Harper v. Herman*, 499 N.W.2d 472, 474 (Minn.1993); *Lundgren v. Fultz*, 354 N.W.2d 25, 27 (Minn. 1984). Such a duty may arise depending on two factors: 1) whether a "special relationship" exists between defendant and the third party, and 2) whether the harm is foreseeable. *Lundgren*, 354 N.W.2d at 27. It is well-settled that the operator of a place of public amusement creates a "special relationship" with the patrons and is under an affirmative duty to make it reasonably safe for patrons. *Diker v. City of St. Louis Park*, 268 Minn. 461, 465, 130 N.W.2d 113, 116

(1964). The duty can include controlling and supervising patrons whose actions may intentionally or negligently injure others. *Id.; see also Johnson v. Amphitheatre Corp.*, 206 Minn. 282, 285, 288 N.W. 386, 387 (1939). In this case, BIR opened its land to the public for the drag racing event. As a result, BIR had an affirmative duty to make the premises reasonably safe for its patrons, which includes controlling and supervising other patrons to prevent foreseeable harm.

▇▇▇ However, the duty imposed upon the operator of a place of public amusement is more limited in the case of a trespasser.[4] Generally, a landowner does not owe a duty to a trespasser. *Hanson v. Bailey*, 249 Minn. 495, 500, 83 N.W.2d 252, 257 (1957); Restatement (Second) of Torts § 333 (1965). But if the landowner knows or should know that a trespasser is present on the premises, then the landowner has a narrowly defined duty to use reasonable care for the safety of the trespasser while carrying on his activities, or to use reasonable care to warn the trespasser of the danger or risk involved. *Id.;* Restatement (Second) of Torts § 336 (1965).[5] However, there is an exception to the trespasser rule: a landowner's duty of reasonable care does not extend to warn or protect against risks which the trespasser knew or, from the facts, should have known.[6]

---

4. Plaintiff admits she was a trespasser because she did not pay for an admission pass.

5. Restatement (Second) of Torts § 336 limits the landowner's liability to "physical harm" caused to the trespasser by the landowner's failure to conduct activities upon the land with reasonable care for the trespasser's safety. We note that plaintiff's complaint makes a claim for medical costs and pain and suffering, but the record does not reflect evidence or a specific allegation that plaintiff sustained physical injuries.

6. 4 Minn. Dist. Judges Ass'n, *Minnesota Practice*, JIG 327 (3d ed. 1986) (emphasis added) provides:

A possessor of land while carrying on activities on the premises is under no duty to warn or use reasonable care for the safety of a trespasser. However, if a possessor of land knows, or from facts the possessor knows or has reason to know, that a trespasser is present on the premises then, **unless the trespasser is already aware or from facts the trespasser knows should be aware of the activities and of**

**the risk involved,** the possessor of land has a duty:
   1. To use reasonable care for the safety of the trespasser while carrying on his activities, or
   2. To use reasonable care to warn the trespasser of the danger or risk involved.

Other states have generally restricted the landowner's duty to trespassers to be limited to concealed dangers. *See, e.g., Carlson v. Tucson Racquet and Swim Club, Inc.*, 127 Ariz. 247, 619 P.2d 756 (1980) (The club was not liable for permanent injuries sustained by a 16–year–old boy who trespassed onto the premises and dove into a pool, because as a matter of law the pool was not a condition that trespassers are not likely to discover); *Alston v. Baltimore & Ohio R.R. Co.*, 433 F.Supp. 553, 568 (D.D.C.1977) ("[T]here is simply no basis under either common law or statute for requiring a landowner to meet a subjective standard of 'reasonableness' toward a person who unlawfully enters onto his premises with the avowed intention of knowingly and deliberately exposing himself to an unconcealed, obviously dangerous hazard thereon."); *Phipps v. Mitze*, 116 Colo. 288, 180 P.2d 233

In essence, this exception simply articulates the well-settled principle that a landowner has no duty to an invitee where the harm involves dangers so obvious that no warning is necessary. *See Baber v. Dill,* 531 N.W.2d 493, 496 (Minn.1995). Although *Baber* involved a business invitee and not a trespasser, the underlying rationale that "no one needs notice of what he knows or reasonably may be expected to know" is equally applicable to the present case. In *Baber* we concluded:

> [A] landowner has no duty to an invitee to warn or make safe known and obvious conditions when that invitee has assisted in creating those conditions. * * * To hold a landowner has a duty to warn an invitee of danger created, in part, by that individual is untenable.

*Id.* Thus, under the facts in the present case, plaintiff's claim must fail. Plaintiff chose to run away from home to attend the drag racing event. She chose to consume large amounts of alcohol and cocaine, and enter the wet T-shirt contest. Plaintiff does not specifically argue that defendants had a duty to ensure that a wet T-shirt contest would not take place at all.[7] In fact, when asked whether the event should have been prevented from happening, plaintiff responded:

> No, I don't really believe—if people want to have a wet T-shirt contest, then it is a wet T-shirt contest, that's their business, that's fine. And I didn't have anything against entering a wet T-shirt contest.

Furthermore, plaintiff admits that, despite being under the influence of alcohol and cocaine, she knew her actions were wrong.[8] Nonetheless, plaintiff contends that defendants had a duty to protect or warn her from the very harm which she actively created and subjectively appreciated. We disagree.

Plaintiff admits being a trespasser, she admits voluntarily entering the contest and she admits that she realized while on stage that her actions were wrong. She could have ended her participation at any time, but chose not to do so. We are not prepared to expand the law to impose a duty on defendants to protect plaintiff from any emotional injuries which she may have incurred as a result of decisions which, in the sober light of day, she might now regret.

On these facts, neither the common law nor the criminal statute impose a duty upon defendants. As a result, plaintiff's claim must fail, the court of appeals' decision is reversed and the trial court's holding is reinstated.

Reversed.

COYNE, J., took no part in the consideration or decision of this case.

---

(1947) (A nine-year-old trespasser drowned in an artificial pond when he waded off an underwater ledge and fell into deep water; the court held that because the danger was apparent, rather than latent, the owner was not liable).

7. Essentially plaintiff's complaint alleges that the criminal acts of Jeffrey Borden and Gregory Peterson were foreseeable and preventable and that BIR and NCS are liable in tort for failing to

prevent plaintiff from being harmed from those acts.

8. In her deposition plaintiff stated:

> I did know it was wrong, but I was very—in a different state of mind. I just—it seemed to me during the whole time that I was in a bad scene and I—I kind of knew what was going on, but it was like I wasn't doing it, I was watching it.