*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1672**

Martin L. Harris,
Appellant,

vs.

Lang Nelson Associates, Inc.
d/b/a Creekside Gables,
Respondent.

**Filed May 18, 2015
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CV-14-955

William Starr, Law Offices of William Starr, Wayzata, Minnesota (for appellant)

Brian A. Meeker, Law Office of Brian A. Meeker, Minneapolis, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Minge, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges summary judgment for respondent in this slip-and-fall case.

We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

After suffering a minor stroke and spending some time in a nursing home, appellant Martin Harris moved to Creekside Gables and resided there with the assistance of an in-home caregiver. Creekside Gables is an apartment building owned and operated by respondent Lang Nelson Associates Inc. The building has two entrances connected to a parking lot by sidewalks. One of the entrances is covered by a canopy.

On March 26, 2013, between 10:30 and 11:00 p.m., Harris left his apartment to drive to a convenience store to purchase gas and cigarettes. He used the sidewalk from the entrance without a canopy to get to his truck. The lighting was "pretty good" around the sidewalk, and he could see where he was going. Harris noticed ice on the sidewalk, which he described as "a good strong glaze, like something . . . refroze." Harris's observation is consistent with a climate data report for March 26, 2013, which shows a high temperature of 39 degrees, a low temperature of 27 degrees, and a lack of precipitation. Harris has lived in Minnesota since 1959 and acknowledged that he was aware that snow sometimes melts during warmer daytime hours and refreezes during cooler evening hours.

Harris returned from the convenience store around 11:00 p.m. and used the same sidewalk to enter the building. According to Harris, the condition of the sidewalk "was basically the same" as when he left his apartment. He was not carrying anything and was not distracted as he walked on the sidewalk. He was wearing rubber-soled shoes and was "trying to be as careful as [he] could." But Harris slipped and fell, sustaining injuries. Although Harris could not remember whether the sidewalk from the canopied entrance

was clear of ice, he claimed that he could not have used that sidewalk because he would have encountered ice in a different location and the canopied entrance was too far from his apartment for him to walk.

Harris sued Lang Nelson for negligence, and Lang Nelson moved for summary judgment. Harris submitted a memorandum prepared by an architect, who noted the location of "a [downspout] diverter" and opined that "[i]f, during a spring snowmelt, the ground is saturated and frozen, and the snow is melting rapidly from the south solar exposure and proximity to a warmer building, water will find its way to the sidewalk surface and potentially refreeze." Lang Nelson submitted a monthly snow log to show that Creekside Gables's caretaker sanded and salted the sidewalks on March 26, 2013, as well as on numerous other days when snow or ice was documented. Lang Nelson also submitted an affidavit from the caretaker, who lived at Creekside Gables and frequently checked the grounds for ice or snow. The caretaker stated that when he saw ice or snow, he removed it when possible and salted and sanded when removal was not possible. According to the caretaker, he "often d[id] this 2–3 times each day." Harris, in contrast, stated that the caretaker "never used sand" and that Harris "never really s[aw the caretaker] out there at night."

The district court granted summary judgment to Lang Nelson and denied Harris's request for leave to move for reconsideration. This appeal follows.

# DECISION

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists

3

and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. "The moving party has the burden of showing an absence of factual issues before summary judgment can be granted." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005). "[W]hen the moving party makes out a prima facie case, the burden of establishing that the facts raise a genuine issue falls to the opposing party." *Brown*, 849 N.W.2d at 62. "Reviewing the district court's grant of summary judgment de novo, [appellate courts] view the evidence in the light most favorable to the party against whom summary judgment was granted." *Finn v. Alliance Bank*, 860 N.W.2d 638, 655 (Minn. 2015) (quotation omitted).

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). "To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.*

*Existence of duty*

Harris challenges the district court's conclusion that Lang Nelson owed Harris no duty. "Duty is a threshold question because a defendant cannot breach a nonexistent duty." *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012) (quotation omitted). "The existence of a duty of care is a question of law that [appellate courts] review de novo." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).

"[The supreme court] ha[s] consistently held that a landowner has a duty to use reasonable care for the safety of all such persons invited upon the premises." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001) (quotations omitted). But "this duty is not absolute." *Id.* at 319.

> [The supreme] court has adopted Restatement (Second) of Torts § 343A, subsection (1), which states: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

*Olmanson v. LeSueur Cnty.*, 693 N.W.2d 876, 881 (Minn. 2005) (quoting Restatement (Second) Torts § 343A(1) (1965)). "A possessor of land . . . has no duty to an invitee where the anticipated harm involves dangers so obvious that no warning is necessary." *Baber v. Dill*, 531 N.W.2d 493, 496 (Minn. 1995). "The rationale underlying this rule is that no one needs notice of what he knows or reasonably may be expected to know." *Id.* (quotation omitted). But the supreme court has recognized that cases exist in which the possessor of land is not relieved of the duty of care when "'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.'" *Peterson v. W. T. Rawleigh Co.*, 274 Minn. 495, 497, 144 N.W.2d 555, 557–58 (1966) (quoting Restatement (Second) Torts § 343A cmt. f).

Harris relies on *Peterson*, in which a business employed elderly people to distribute goods. 274 Minn. at 495–96, 144 N.W.2d at 557. After a snowfall, one of the employees, who observed that the parking lot was icy, attempted to traverse it to access

5

the business's main entrance and slipped and sustained injuries. *Id.* at 496, 144 N.W.2d at 557. A jury awarded the employee damages, and the supreme court concluded that "a jury could find defendant should have foreseen that its elderly distributors would come to the loading dock for its products and attempt to negotiate the area between the dock and the entryway despite the slippery conditions." *Id.* at 495, 497, 144 N.W.2d at 557–58. Lang Nelson argues that *Peterson* is distinguishable from this case because Peterson could not avoid the icy parking lot without sacrificing his livelihood. Here, Harris chose to walk on the icy sidewalk, and his choice had nothing to do with his livelihood. We agree that Harris's reliance on *Peterson* is misplaced.

In *Jensen v. Allied Cent. Stores, Inc.*, the supreme court clarified the reasoning behind its decision in *Peterson*, noting that in *Peterson,* "the condition was patently dangerous but there were compelling reasons for salesmen to attempt to traverse the area." 283 Minn. 332, 334, 167 N.W.2d 739, 741 (1969). Distinguishing the facts in the case before it, which involved a 74-year-old woman who fell down a small flight of stairs in a department store while reaching for a bonnet, the court stated, "In [*Peterson*] the plaintiff's livelihood was involved, where here [the plaintiff] was under no such compulsion." *Id.* at 333−34, 167 N.W.2d at 740−41.

This case is distinguishable from the cases in which possessors of land have not been relieved of the duty of care because they should have anticipated that an obviously dangerous condition would cause physical harm to an invitee. While no dispute exists about whether the ice on which Harris slipped was an open and obvious condition, Harris argues that, even if the ice was open and obvious, Lang Nelson still owed him a duty of

6

care because Lang Nelson had reason to expect that he would fall on the "chronic icy conditions of [the] sidewalk." But as in *Jensen*, and unlike in *Peterson*, Harris's livelihood was not involved and he was under no compulsion to travel over the obviously icy sidewalk. We conclude that the district court correctly granted summary judgment to Lang Nelson.

*Additional issues*

The parties raise additional issues on appeal. Harris argues that Lang Nelson did not make reasonable efforts to keep the sidewalk free from ice and snow. Lang Nelson argues that the district court should have disregarded the architect's memorandum submitted by Harris because it was not admissible evidence. Because our conclusion on the issue of Lang Nelson's duty is dispositive of this case, we decline to address the remaining issues. *See Dahl v. Charles Schwab & Co.*, 545 N.W.2d 918, 926 n.2 (Minn. 1996) (declining to address primary-jurisdiction issue because preemption issue was dispositive of case).

**Affirmed.**